**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)                              *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARLENE BRADLEY, | : | **Civil Action No.** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| TEMPLE UNIVERSITY HEALTH | : | |
| SYSTEM, INC., | : | |
| **Defendant.** | : | |

### CIVIL ACTION

Plaintiff, Arlene Bradley (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against Temple University Health System, Inc. (hereinafter "Defendant"), for violations of the Age Discrimination in Employment Act ("ADEA"), the Pennsylvania Human Relations Act ("PHRA"), the Philadelphia Fair Practices Ordinance ("PFPO") and the Family and Medical Leave Act of 1993, as amended ("FMLA"). In support thereof, Plaintiff avers as follows:

### THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing in Philadelphia, PA.

3. Upon information and belief, Defendant Temple University Health System is a healthcare network with a location and corporate headquarters located at 3401 N Broad Street,

Philadelphia, PA 19140.

4. Defendant is an entity engaged in an industry or activity affecting commerce which employs 50 or more employees in all of its offices for each working day during each of 20 or more calendar workweek in the current or preceding year.

5. At all times material hereto, Plaintiff was employed by Defendant for at least twelve hundred and fifty (1,250) hours of service during the twelve-month period prior to requiring leave.

6. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment.  In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

7. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer.  In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

8. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

9. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

2

10. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

11. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

12. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

14. Plaintiff exhausted her administrative remedies under the ADEA and the PHRA.

15. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging age discrimination against Defendant.

16. The Charge was assigned a Charge Number 530-2026-03522 and was dual filed with the Philadelphia Commission on Human Relations ("PCHR").

17. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated March 30, 2026.

18. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

3

19. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter, as it relates to her federal law claims, and within two (2) years of the issuance of the Right to Sue in this matter as it relates to her PHRA and PFPO claims.

20. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

## PLAINTIFF'S EMPLOYMENT HISTORY

21. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

22. Plaintiff was born in 1969.

23. On or about May 9, 2016, Defendant hired Plaintiff in the position of Patient Care Assistant ("PCA").

24. Plaintiff was well qualified for her position and performed well.

## PLAINTIFF SUFFERED FROM SYMPTOMS RELATED TO MENOPAUSE

25. Beginning in or around 2024, Plaintiff began experiencing menopause, a medical condition associated with women of Plaintiff's age.

26. Plaintiff's menopause symptoms included difficulty concentrating, difficulty focusing, and hot flashes that interfered with her ability to perform her job duties.

27. In or around April 2024, Plaintiff was prescribed medication to address her symptoms, but she was able to tolerate the medication for only approximately one (1) week before having to discontinue it.

28. In or around February and March 2025, with the assistance of Brian Fitzpatrick, Nurse Manager, Plaintiff changed her schedule from the full-time 3:00 p.m. to 11:00 p.m. shift to the part-time 7:00 a.m. to 3:00 p.m. shift in an effort to manage her menopause symptoms.

4

29. Despite the schedule change, Plaintiff continued to experience difficulty focusing and at times needed to call out from work.

30. Plaintiff openly communicated her menopause-related symptoms and her resulting difficulties to her coworkers and Fitzpatrick because she was frustrated with the effect the symptoms were having on her work.

## PLAINTIFF WENT OUT ON FAMILY AND MEDICAL LEAVE ACT LEAVE

31. On or about April 10, 2025, Plaintiff informed Fitzpatrick that she was struggling with the symptoms of menopause.

32. Fitzpatrick informed Plaintiff that he would remove her from the schedule for approximately twelve (12) weeks and directed her to contact Matrix, Defendant's third-party leave administrator, to apply for Family and Medical Leave Act ("FMLA") leave.

33. Plaintiff followed Fitzpatrick's instructions and applied for FMLA leave with Matrix.

34. Plaintiff began her leave of absence on or about April 10, 2025.

35. On or about April 17, 2025, Plaintiff contacted Dr. Nicole Davis, Primary Care Physician, to schedule an appointment for April 21, 2025.

36. On April, 21, 2025, Dr. Davis examined Plaintiff and informed her that an evaluation by her gynecologist was necessary, but the earliest available appointment was not until May 20, 2025.

37. On or about April 22, 2025, Plaintiff contacted Matrix and was cleared to be off work until July 1, 2025, with the ability to return earlier upon presentation of a doctor's note.

38. Fitzpatrick had removed Plaintiff from the schedule through July 14, 2025.

39. On April 22, 2025, Plaintiff sent a text message to Fitzpatrick confirming that she had spoken with Matrix and that she was out of work until July 1, 2025.

40. Plaintiff's request for leave, and the leave she took, were for a serious health condition within the meaning of the FMLA, namely her menopause-related condition.

41. On May 20, 2025, Plaintiff was examined by Dr. Paul M. Newman, OB/GYN, who continued Plaintiff's FMLA leave.

**DEFENDANT'S MISHANDLING AND DENIAL OF PLAINTIFF'S FMLA LEAVE**

42. In or about June 2025, Matrix issued a denial of Plaintiff's FMLA application, asserting that the medical certification did not reflect a medical treatment date for April 2025.

43. Plaintiff promptly notified her physician's office of the denial, and her providers resubmitted her medical documentation.

44. Plaintiff was advised by Defendant's own leave administrator that Matrix was repeatedly submitting and processing the same form, which was causing the denials, and Plaintiff was instructed to send her documentation directly to the administrator, which Plaintiff did, including all of her doctor's notes and related records.

45. Plaintiff's medical certification identified her diagnosis as menopause and identified the first date on which she was unable to work as April 12, 2025.

46. On or about June 27, 2025, Marianna Dolan, Practice Administrator, Temple Health Northwest Community Family Medicine, confirmed in writing that the requested dates had been added to Plaintiff's certification form, that Dr. Davis would re-sign the corrected form, and that the office would fax the corrected form to Donna Monaco, Absence Management Specialist.

47. Plaintiff diligently and repeatedly provided, corrected, and resubmitted the medical documentation requested of her in an effort to substantiate and preserve her leave.

48. On or about August 8, 2025, Monaco advised Plaintiff in writing that she did not need Plaintiff's physician to complete the paperwork again and that she was waiting for a response from Defendant's side.

49. As of August 8, 2025, the documentation that Defendant claimed was outstanding had been provided, and any remaining delay was attributable to Defendant rather than to Plaintiff.

**DEFENDANT REFUSED TO ALLOW PLAINTIFF TO RETURN TO WORK**

50. On or about June 16, 2025, Plaintiff obtained a return-to-work note from Dr. Lynda T. Thomas-Mabine, OB/GYN, which stated that Plaintiff had been seen on May 20, 2025, and June 10, 2025, and that she was cleared to return to work as of June 11, 2025.

51. On or about June 16, 2025, Plaintiff provided her return-to-work note to Monaco and informed Defendant that she was feeling better and was ready to return to work.

52. Additionally on June 16, 2025, Plaintiff sent a text message to Valerie Seccia, Director of Nursing Services, advising that she had submitted her return-to-work note, that she was ready to return, and asking whether she could put her schedule in.

53. Seccia responded that she would contact Plaintiff.

54. On or about June 17, 2025, Seccia advised Plaintiff that she had reached out to the absence managers and Human Resources regarding Plaintiff's ability to return and was awaiting a response.

55. Later on or about June 17, 2025, Seccia told Plaintiff via text message that, at that time, Plaintiff was not cleared to return to work.

56. When Plaintiff pressed to return, Seccia informed Plaintiff via text message that she had been "out on a leave that has not been approved," that the matter was "in Matrix hands," and that Plaintiff needed to wait.

57. Plaintiff repeatedly advised Defendant that she had submitted her note and her documentation and that she was ready and able to return to work.

58. Plaintiff continued to submit doctor's notes thereafter.

59. Despite Plaintiff's medical clearance to return as of June 11, 2025, and despite her repeated requests, Defendant refused to restore Plaintiff to her position or to any equivalent position and refused to place her back on the schedule.

60. At no point did Defendant restore Plaintiff to the same or an equivalent position following her leave.

## DEFENDANT TERMINATED PLAINTIFF

61. By letter dated August 20, 2025, which Plaintiff received on or about August 26, 2025, via FedEx, Defendant terminated Plaintiff's employment.

62. Defendant asserted that Plaintiff was terminated for failure to return to work, citing an absence purportedly beginning on or about April 5, 2025.

63. Plaintiff was 55 years old at the time of her termination.

64. During Plaintiff's exit interview, Seccia told Plaintiff that Plaintiff's "story kept changing" and that this was a "pattern" in Seccia's eyes, and stated that Plaintiff was being terminated because she had been on unapproved leave.

65. At no point did Defendant attempt to have Plaintiff return to work or alert Plaintiff that she needed to return to work in order to avoid termination.

8

66. Defendant terminated Plaintiff even though Plaintiff had been medically cleared to return as of June 11, 2025, had repeatedly sought to return, and had repeatedly provided the documentation requested of her.

**PLAINTIFF FILED A GRIEVANCE REGARDING HER TERMINATION**

67. Plaintiff timely filed a grievance challenging her termination through her union, District 1199C, National Union of Hospital and Health Care Employees, with Tiffany Patterson, Union Representative, District 1199C, serving as her representative.

68. On or about November 18, 2025, a grievance hearing was held.

69. During the hearing, Seccia asserted that Plaintiff had not been on the schedule and that Plaintiff's FMLA leave had been denied based on sciatica.

70. Patterson corrected the record at the hearing, stating that Plaintiff's leave was for menopause and not for sciatica.

71. Defendant further asserted that Plaintiff's FMLA certification lacked a treatment date, that this was the reason Matrix denied the FMLA application, and that, because the application had been denied, Defendant was denying Plaintiff's leave.

72. On November 20, 2025, D. Scott Blake, Employee and Labor Relations Representative, denied the grievance at Step 3 on Defendant's behalf.

73. Blake again asserted that Plaintiff had failed to return to work since on or about April 5, 2025, and asserted that Plaintiff had failed to provide the necessary documentation despite numerous communications.

74. Defendant's stated reasons for Plaintiff's termination shifted over time and were inconsistent, variously attributing the leave to sciatica rather than menopause, asserting that Plaintiff's "story kept changing", or words to that effect, and faulting Plaintiff for

9

documentation that Plaintiff had in fact provided and that Monaco confirmed was no longer needed.

75. On January 22, 2026, Dionne Gary, Acting President, District 1199C, notified Plaintiff that the union would not pursue her grievance to arbitration.

76. Defendant's proffered reasons for refusing to reinstate Plaintiff and for terminating her employment are pretextual, and the true reasons for Defendant's actions were Plaintiff's age, Plaintiff's menopause-related condition associated with her age, and Plaintiff's exercise of her rights to take and to seek reinstatement following medical and FMLA leave.

77. Defendant discriminated against Plaintiff due to her age in violation of the ADEA, the PHRA and the PFPO.

78. In addition, Defendant interfered with Plaintiff's rights under the FMLA and retaliated against her for utilizing her rights under the FMLA in violation of the FMLA.

79. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

## COUNT I – AGE DISCRIMINATION
## <u>AGE DISCRIMINATION IN EMPLOYMENT ACT</u>

80. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

81. Plaintiff was born in 1969.

82. Plaintiff was qualified to perform the job.

83. Defendant terminated Plaintiff.

84. Defendant has no legitimate non-discriminatory reason for its actions.

85. As a result of Defendant's unlawful age discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT II – AGE DISCRIMINATION**
**<u>PENNSYLVANIA HUMAN RELATIONS ACT</u>**

86. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

87. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of her age.

88. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

   **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT III – AGE DISCRIMINATION**
**<u>PHILADELPHIA FAIR PRACTICES ORDINANCE</u>**

89. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

90. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of her age.

91. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

   **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT IV – INTERFERENCE**
**<u>FAMILY AND MEDICAL LEAVE ACT OF 1993, AS AMENDED</u>**

92. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

11

93. The FMLA declares it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" any right provided by the FMLA. 29 U.S.C. 2615(a)(1).

94. At all times material, Defendant knew, or should have known, of Plaintiff's need for FMLA leave to care for her own serious health condition.

95. Defendant acted in bad faith by interfering with Plaintiff's rights under the FMLA.

96. Defendant knowingly, intentionally, willfully and/or recklessly acted in disregard of the duty to grant Plaintiff's FMLA-related request for leave.

97. Defendant's aforementioned actions violate 29 U.S.C. § 2615(a)(1) of the Family and Medical Leave Act in that the employer cannot "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" any right provided by the FMLA. 29 U.S.C. 2615(a)(1).

98. As a direct and proximate result of Defendant's unlawful interference with Plaintiff's rights under the FMLA, Plaintiff has been deprived of economic and non-economic benefits including, but not limited to lost wages, pain and suffering, mental anguish, humiliation, loss of fringe benefits, disruption of her personal life and loss of enjoyment of the ordinary pleasures of life.

99. Plaintiff demands judgment in her favor against Defendant for all available equitable relief including, but not limited to: unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

100. Plaintiff further demands judgment in her favor against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those

sums, as liquidated damages under § 2617(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the Family and Medical Leave Act of 1993.

**WHEREFORE**, Plaintiff demands compensatory and liquidated damages in addition to counsel fees and costs.

**COUNT V – RETALIATION**
**FAMILY AND MEDICAL LEAVE ACT OF 1993, AS AMENDED**

101. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

102. Pursuant to 29 U.S.C. § 2611(2)(A) and 29 U.S.C. § 2612(a)(1)(C), Plaintiff was eligible for leave under the FMLA.

103. At all times material, Defendant knew, or should have known, of Plaintiff's need for FMLA Leave to care for her own serious medical condition.

104. Plaintiff gave Defendant sufficient information to allow it to understand that she needed leave for FMLA-qualifying reasons.

105. The retaliation occurred in the form of the continued implementation of a policy that discourages and interferes with Plaintiff's right to invoke her federally protected rights under the FMLA.

106. As a result of Plaintiff's attempt to invoke her FMLA rights, by requesting and utilizing her FMLA rights, Defendant has retaliated against Plaintiff by terminating her employment.

107. Defendant's motivation for retaliating against Plaintiff was connected causally to Plaintiff's FMLA leave.

108. Defendant has acted in bad faith by retaliating against Plaintiff in violation of the FMLA.

109. As a direct and proximate result of Defendant's discharge of Plaintiff, Plaintiff is and was deprived of economic and non-economic benefits resulting from Defendant's willful and/or non-willful actions including but not limited to: loss of back pay, loss of increase in salary, loss of benefits preceding Plaintiff's filing of the lawsuit, cost of providing care, and double liquidated damages under the FMLA for violations not made in good faith.

110. Plaintiff demands judgment against Defendant for all available equitable relief including, but not limited to: reinstatement to job position, full restoration of all leave and health benefits, to which Plaintiff was entitled, and any additional unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

111. Plaintiff further demands favorable judgment against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under §107(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the FMLA.

**WHEREFORE**, Plaintiff demands compensatory and liquidated damages in addition to counsel fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Arlene Bradley, requests that the Court grant her the following relief against Defendant:

(a)    Compensatory damages;

14

(b)     Punitive damages;

(c)     Liquidated damages;

(d)     Emotional pain and suffering;

(e)     Reasonable attorneys' fees;

(f)     Recoverable costs;

(g)     Pre and post judgment interest;

(h)     An allowance to compensate for negative tax consequences;

(i)     A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADEA, the PHRA, the PFPO and the FMLA.

(j)     Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training  programs, policies, practices and programs which provide equal employment opportunities;

(k)     Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l)     Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy

is not the subject of any other action pending in any court or of a pending arbitration proceeding,

nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: June 29, 2026                    **By:**  */s/David M. Koller*
                                        David M. Koller, Esquire
                                        Jordan D. Santo, Esquire
                                        2043 Locust Street, Suite 1B
                                        Philadelphia, PA 19103
                                        215-545-8917
                                        davidk@kollerlawfirm.com
                                        jordans@kollerlawfirm.com

                                        *Counsel for Plaintiff*